**Nos. 2017-1360 and 2017-1361**

**UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

THINK PRODUCTS, INC.,

*Appellant,*

*v.*

ACCO BRANDS CORPORATION and
ACCO BRANDS USA LLC,

*Appellees.*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in
Nos. IPR2015-01167 and IPR2015-01168

# BRIEF OF APPELLEES
# ACCO BRANDS CORPORATION AND ACCO BRANDS USA LLC

Michael R. Weiner
Sandip H. Patel
Thomas L. Duston
Tron Y. Fu
MARSHALL, GERSTEIN & BORUN LLP
6300 Willis Tower
233 S. Wacker Dr.
Chicago, IL 60606
(312) 474-6300

*Counsel for Appellees*

## CERTIFICATE OF INTEREST

Counsel for the appellees certifies the following:

1. The full name of every party or amicus represented by me is:

   ACCO Brands Corporation and ACCO Brands USA LLC

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   None

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   Wellington Management Company, LLP owns 10 percent or more of the stock of ACCO Brands Corporation.

   ACCO Brands Corporation owns 10 percent or more of the stock of ACCO Brands USA LLC.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

   None

May 19, 2017

/s/ Michael R. Weiner
Michael R. Weiner

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST .......... i

TABLE OF AUTHORITIES .......... iii

STATEMENT OF RELATED CASES .......... v

I. STATEMENT OF THE ISSUES .......... 1

II. STATEMENT OF THE CASE .......... 1

A. Preliminary Statement .......... 1

B. Procedural History .......... 2

C. The ’748 and ’144 Patents and Challenged Claims .......... 3

D. Prior Art .......... 7

E. The Board’s Final Written Decisions .......... 13

III. SUMMARY OF THE ARGUMENT .......... 20

IV. ARGUMENT .......... 22

A. Standard of Review .......... 22

B. The Board Correctly Construed *Captive Security Rod* .......... 23

C. The Board Correctly Determined that the Effective Filing Date of the ’758 and ’144 Patents Is No Earlier than February 28, 2011 .......... 31

D. The Board Correctly Determined that the Challenged Claims Are Unpatentable Over ClickSafe and McDaid .......... 35

E. Substantial Evidence Supports the Board’s Findings Concerning McDaid’s Disclosure and a Motivation to Combine McDaid and Chen .......... 35

F. The Board Did Not Err in Weighing Witness Testimony .......... 42

V. CONCLUSION .......... 43

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Apple Inc. v. Samsung Elecs. Co.*,
839 F.3d 1034 (Fed. Cir. 2016) ....................22

*Bieber v. Department of Army*,
287 F. 3d 1358 (Fed. Cir. 2002) ....................42

*Bradford Co. v. ConTeyor N. Am., Inc.*,
603 F.3d 1262 (Fed. Cir. 2010) .................... 23, 31

*Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002) ....................30

*Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*,
460 F.3d 1349 (Fed. Cir. 2006) .................... 23, 26

*Cuozzo Speed Techs., LLC v. Lee*,
136 S. Ct. 2131 (2016).................... 22, 23

*Genzyme Therapeutic Prods. Ltd. P'ship v. Biomarin Pharm. Inc.*,
825 F.3d 1360 (Fed. Cir. 2016) ....................36

*In re Baxter Int'l, Inc.*,
678 F.3d 1357 (Fed. Cir. 2012) .................... 24, 26

*In re Cuozzo Speed Techs., LLC*,
793 F.3d 1268 (Fed. Cir. 2015) ....................22

*Inphi Corp. v. Netlist, Inc.*,
805 F.3d 1350 (Fed. Cir. 2015) ....................22

*Kennametal, Inc. v. Ingersoll Cutting Tool Co.*,
780 F.3d 1376 (Fed. Cir. 2015) ....................22

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)....................36

*Meiresonne v. Google, Inc.*,
849 F.3d 1379 (Fed. Cir. 2017) ....................23

**TABLE OF AUTHORITIES**
(*Continued*)

**Page(s)**

*Microsoft Corp. v. Proxyconn, Inc.*,
789 F.3d 1292 (Fed. Cir. 2015) ....................22

*Novartis AG v. Torrent Pharm. Ltd.*,
853 F.3d 1316 (Fed. Cir. 2017) .................... 24, 26, 39

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ....................30

*Teva Pharm. U.S.A., Inc. v. Sandoz, Inc.*,
135 S. Ct. 831 (2015)....................22

*Tronzo v. Biomet, Inc.*,
156 F.3d 1154 (Fed. Cir. 1998) ....................31

*Vas-Cath Inc. v. Mahurkar*,
935 F.2d 1555 (Fed. Cir. 1991) ....................31

**STATUTES**

35 U.S.C. § 112....................31

**RULES**

37 C.F.R. § 42.100(b) ....................23

## STATEMENT OF RELATED CASES

There have been no other appeals in or from the same proceedings, before this or any other appellate court.

In *Think Products, Inc. v. ACCO Brands Corp*., Case No. No. 2:14-cv-06659 (E.D.N.Y.), appellant Think Products, Inc. has asserted that ACCO Brands Corporation and ACCO Brands USA LLC infringe the patents at issue in this appeal. That case is stayed pending the outcome of this case. Counsel for ACCO Brands Corporation and ACCO Brands USA LLC is not aware of any other case pending in this or any other court that will directly affect or will be directly affected by the Court's decision in this appeal.

## I. STATEMENT OF THE ISSUES

1. Whether Think Products waived its claim construction argument; and whether the Board correctly construed the term *captive security rod*.

2. Whether the Board correctly determined that the effective filing date of the ’758 and ’144 patents is no earlier than February 28, 2011, and that the ClickSafe video is therefore prior art.

3. Whether substantial evidence supports the Board’s finding that there was a motivation to combine McDaid and Chen.

## II. STATEMENT OF THE CASE

### A. Preliminary Statement

Appellees ACCO Brands Corporation and ACCO Brands USA LLC (jointly, “ACCO”) filed two petitions for *inter partes* review of several claims of U.S. Patent Nos. 8,717,758 and 8,837,144, owned by appellant, Think Products, Inc. (“Think Products”). The challenged claims recite cable-lock products used to secure devices such as laptop computers, and methods of using the products.

The Board granted the petitions, and ultimately issued final written decisions canceling all challenged claims as anticipated by or obvious in view of prior art. The Court should affirm the Board’s judgments because the Board correctly construed the single disputed claim term, determined the correct priority benefit date to which the claims were entitled, and determined that the challenged claims were anticipated by or obvious in view of the prior art.

### B. Procedural History

On November 12, 2014, Think Products filed a complaint against ACCO, alleging that ACCO's ClickSafe® line of computer lock products infringe Think Products' U.S. Patent Nos. 8,717,758 and 8,837,144. Appx2513–2537.

On May 7, 2015, ACCO filed petitions for *inter partes* review of several claims of the '758 and '144 patents, relying on prior art including: (1) McDaid, U.S. Patent No. 6,360,405 ("McDaid"); (2) Chen, U.S. Patent No. 5,829,280 ("Chen"); (3) Lee, U.S. Patent No. 7,073,358; and (4) the ClickSafe Product Website Video ("ClickSafe video"). Appx148–280; Appx2413–2440; Appx2450–2476.

Think Products filed preliminary responses to the petitions, arguing that the Board should not institute IPRs for several reasons, including an argument that the petitions improperly relied on the testimony of "an 'actual' person skilled in the art, not the required 'hypothetical' one," to support the petition's arguments on anticipation and obviousness. Appx2780–2781.

On October 21, 2015, the Board instituted IPRs on all challenged claims. Appx2784–2830. In its institution decisions the Board construed several claim terms, including *captive security rod*.

Following institution, the parties engaged in motion practice, conducted expert discovery, and submitted additional merits briefs. Appx2–3; Appx36–37. The Board heard oral argument on June 29, 2016. Appx3; Appx37.

On October 11, 2016, the Board issued Final Written Decisions in both IPRs, concluding that ACCO had shown, by a preponderance of the evidence, that all challenged claims were unpatentable. Appx34; Appx66. In particular, the Board concluded that: (a) claims 1–7, 9–13, and 16 of the ’758 patent and claims 1–11 and 14–20 of the ’144 patent were anticipated by the ClickSafe video; (b) claim 14 of the ’758 patent and claim 12 of the ’144 patent were obvious over the ClickSafe video and McDaid; and (c) claims 1–7, 9–14, and 16 of the ’758 patent and claims 1–12 and 14–20 of the ’144 patent were obvious over McDaid and Chen.

In reaching these conclusions, the Board reiterated its initial construction of *captive security rod*; determined that the earliest-possible effective filing date of the challenged claims was February 18, 2011, and that the ClickSafe video was therefore anticipatory prior art; and found that a person of ordinary skill would have been motivated to combine the disclosures of McDaid and Chen. Appx12–15; Appx18–23; Appx30–32; Appx44–46; Appx50–55; Appx62–64.

### C. The ’748 and ’144 Patents and Challenged Claims

The ’758 and ’144 patents, both entitled “Locking Assembly for Electronic Tablet and Other Devices,” relate to locking assemblies for tablet computers, smart

phones, e-readers, laptop computers, and other hand-held electronic devices. Appx326 (1:30–41); Appx1378 (1:34–43).

The ’144 patent is a continuation of the ’758 patent, which is a continuation of U.S. Patent No. 8,223,488, and the ’488 patent issued based on an application filed on February 18, 2011. The ’488 patent is a continuation-in-part of the next earliest patent to which the ’758 and ’144 patents claim priority. The relevant portion of the patent family’s priority chain was correctly illustrated by the Board as follows:




Appx0005; Appx0282; Appx1334–1335.

The challenged claims include independent claims 1 and 16 of the ’758 patent, and independent claims 1, 14, and 20 of the ’144 patent. Claim 1 of the

’758 patent and claim 1 of the ’144 patent, which the Board identified as illustrative of the claimed subject matter, read as follows:

> [’758 patent] 1. A locking assembly for securing a portable electronic device having at least one housing to a substantially immovable object, the locking assembly comprising:
>
> a *captive security rod* having a locking end and an anchoring end, wherein the anchoring end is passed through the at least one housing to anchor the captive security rod thereto;
>
> said captive security rod partially in said at least one housing and partially out of said at least one housing during and before locking use; and
>
> a locking device with a locking mechanism, wherein the locking device is configured with an opening to receive the locking end of the captive security rod to activate the locking mechanism, where the activation causes the locking mechanism to securely grasp the locking end and thereby lock the security rod and portable electronic device to the locking device.

Appx335 (19:18–34) (emphasis added).

> [’144 patent] 1. A locking assembly for securing a portable electronic device having at least one housing to a substantially immovable object, the locking assembly comprising:
>
> a *captive security rod* having a locking end and an anchoring end, wherein the anchoring end is installed in the at least one housing to anchor the captive security rod thereto;
>
> said captive security rod being captive partially in said at least one housing after installation and partially out of

> said at least one housing during and before locking use after installation; and,
>
> a locking device with a locking mechanism, wherein the locking device is configured with an opening to receive the locking end of the captive security rod to activate the locking mechanism, where the activation causes the locking mechanism to securely grasp the locking end and thereby lock the installed security rod and portable electronic device to the locking device.

Appx1387 (19:16–33) (emphasis added).

As summarized by the Board, these claims generally require two pertinent features: (1) a captive security rod having a locking end and an anchoring end, wherein the anchoring end is passed through the at least one housing of a portable electronic device to anchor the captive security rod thereto; and (2) a locking device with a locking mechanism, wherein the locking device is configured to receive the captive security rod to activate the locking mechanism. Appx20; Appx52.

Claim 20 of the ’144 patent, which Think Products identified in its appeal brief as illustrative, reads as follows:

> [’144 patent] 20. A method for securing a portable electronic device having a housing to a substantially immovable object utilizing a locking assembly, the locking assembly comprising *a security rod or spike formed with an anchoring end separated axially by a protruding end*, a locking device with an internal locking mechanism and a cable permanently attached to the locking device at one end, the method comprising acts of:

> securely installing the anchoring end of the security rod or spike to the portable electronic device in the housing;
>
> attaching an other end of the cable to the substantially immovable object;
>
> and inserting the locking end of the security rod or spike into an opening in the locking device to actuate the internal locking mechanism and lock the locking device to the captive security rod or spike and, therefore, the portable electronic device to which it is anchored, to the substantially immovable object.

Appx1387–1388 (20:66–21:15) (emphasis added).

As summarized by the Board, claim 20 of the '144 patent recites a method for securing a portable electronic device having a housing to a substantially immovable object utilizing a locking assembly, including the steps of: (1) securely installing the anchoring end of a security rod or spike to a portable electronic device in the housing of the device; and (2) inserting the locking end of the security rod or spike into an opening in the locking device to actuate the locking mechanism. Appx54 (citing Appx1388).

### D. Prior Art

The Board conducted its review based on three pieces of prior art, including the ClickSafe video, whose status as prior art was challenged by Think Products, and two patents that the parties agree are prior art.

### 1. The ClickSafe Video

The ClickSafe video, which promotes ACCO's ClickSafe product line, was publicly available as of October 12, 2010. The parties agree and the Board concluded that the ClickSafe video is a printed publication, published in October 2010, and that unless the '758 and '144 patents are entitled to an earlier priority benefit date, the ClickSafe video anticipates all challenged claims, except for claim 14 of the '758 patent and claim 12 of the '144 patent, which the Board determined are obvious over the ClickSafe video and McDaid. Appx182–191; Appx2463–2476; Blue Br. at 15.

### 2. McDaid

McDaid, entitled "Security Anchor/Tether Assemblage for Portable Articles," issued on March 26, 2002, and McDaid discloses a security device for locking a portable electronic device, such as a laptop computer, to a substantially immovable object. McDaid describes the use of an anchor that is installed in, and protrudes from, the housing of the portable device. A locking head attached to a cable grasps the protruding portion of this anchor, thereby locking the device to an immovable object. Appx2413–2424. McDaid's device is shown generally in Figures 1 and 10 (Appx2414; Appx2419):



FIG. 1



FIG. 10

McDaid discloses nearly all limitations of the challenged claims. In particular, McDaid discloses a security device including a captive security rod (anchor 20) having a locking end (external member 24) and an anchoring end (internal member 22). The anchoring end is passed through the housing to anchor the captive security rod, as described in the specification and shown in Figures 1 and 3 (with blue annotations and yellow highlighting added):







FIG. 3

Appx2421 (3:26–43); Appx2414; Appx2416.

Once installed, the anchor is affixed to the housing of the electronic device. Both before and during locking use, the captive security rod (anchor 20) remains partially in the housing (internal member 22) and partially out of the housing (external member 24). Appx2421 (3:53-55). The locking device disclosed in McDaid includes a locking mechanism (locking head 104) having an opening 132 to receive the locking end (knob 60 of external member 24) of the captive security rod (anchor 20), as illustrated in Figure 1 (with blue annotations added):



FIG. 1

Appx2422 (5:41–6:15); Appx2414. McDaid's anchor 20, including knob 60, is captured and held by the locking head 104 at locking actuation, which occurs by inserting a key into the locking head, and then rotating the cylinder 128 into the locking position. Appx2423 (7:33–39). McDaid does not disclose a device that is locked simply by inserting the captive security rod into the locking head.

### 3. Chen

Chen, entitled "Cable Locking Device with Automatic Pop-up Feature," issued on November 3, 1998. Chen discloses a cable locking device for use on portable objects such as bicycles, shown generally in Figures 1B and 4 (with yellow highlight and blue annotation added):




FIG. 1B




FIG. 4

Appx2425; Appx2427; Appx2429.

Chen discloses a cable lock assembly that is automatically locked (activated) when a locking bar (referred to as locking head 64) is inserted into the locking device (head hole 12 of main body 10). As stated in Chen, unlike in the prior art, a key is not required to lock the mechanism: "The user needs not to use the key of the locking device to turn the inner cylinder 22 and the locking mechanism 40 to the unlocked state in order to receive the locking head 64 as required when using a prior art locking device." Appx2438 (5:49–57). Chen further states that its disclosed device is more easily operable than prior-art locking devices:

> It is a further objective of the present invention to provide a cable locking device with an automatic pop-up feature which *utilizes an axial locking mechanism instead of a radial locking mechanism* as in prior art that allows the locking device to be *more easily operable* than the prior art.

Appx2436 (1:63–65) (emphasis added).

### E. The Board's Final Written Decisions

The Board's final written decisions construed the term *captive security rod*; determined that the ClickSafe video is prior art that anticipates all challenged independent claims; and determined that all challenged claims are obvious over McDaid and Chen.

#### 1. Construction of *Captive Security Rod*

In both final written decisions, the Board construed the term *captive security rod*, which is recited in claim 1 of the '758 patent and claim 1 of the '144 patent. Appx335; Appx1387. Claim 20 of the '144 patent does not recite a *captive security rod*; instead it recites a "security rod or spike formed with an anchoring end separated axially by a protruding end." Appx1387–1388.

In both IPRs, the Board construed *captive security rod* according to its preliminary construction in the institution decisions: "a rod-shaped portion of a locking assembly, wherein the rod is anchored to the housing of a portable electronic device." In its final written decisions, the Board referred to its preliminary claim construction analysis in the institution decisions, in which it considered the embodiments illustrated in Figures 28-30 of the specification. The Board noted that ACCO agreed with the Board's preliminary construction, and that Think Products proposed a different construction. Appx12 (citing Appx2843-

2849); Appx44-45 (citing Appx2867). In particular, Think Products had proposed the following construction:

> Accordingly, Think Products respectfully submits that the proper construction of the "captive security rod" claim term includes, but is <u>not</u> necessarily limited to, a rod or spike **285** that may include a ferrule **286** so that, upon insertion through a hole of a locking mechanism, the rod, spike or anchor is locked, via, *e.g.*, a pin lock 110 or another type of locking device, within the hole sufficient for barring unintended removal of the spike or rod from the hole.

Appx2849; Appx2871.

The Board considered and rejected Think Products' proposed construction, determining that the proposed construction was inconsistent with the description of *captive security rod* in the specification, the depiction of "captive security rod 291" in Figure 30, and with arguments Think Products made during prosecution of the '758 patent. For example, the Board noted the specification describes a *captive security rod* as a rod that is anchored to a portable electronic device and used with a cable and lock to secure the portable electronic device to a table leg or other object. Appx13; Appx46. Moreover, the Board noted that the specification states that the *captive security rod* "is anchored" to the portable electronic device. Appx12–15; Appx44–47.

The Board further noted that, as depicted in Figure 30, a "captive security rod 291" is not inserted through the hole of a locking device or locked in the hole

of a locking device. Finally, the Board noted that Think Products' proposed construction was inconsistent with arguments Think Products made during prosecution, distinguishing Murray, U.S. Patent No. 5,502,989, on the basis that "Murray's rectangular T-shaped locking member 124 is stored out of the housing 137 during non-use and between deployments." Accordingly, the Board concluded that the broadest reasonable interpretation of *captive security rod* is "a rod-shaped portion of a locking assembly, wherein the rod-shaped portion is anchored to a portable electronic device." Appx14–15; Appx46–47.

### 2. Priority Benefit Date

The Board considered Think Products' argument that the challenged claims were entitled to the benefit of the May 23, 2008, filing date of the application that issued as U.S. Patent No. 7,724,520, and determined that the earliest-possible effective filing date of the challenged claims is February 28, 2011. Therefore, the Board concluded that the ClickSafe video is prior art, which anticipates all of the challenged independent claims. Appx18–23; Appx50–55.

Before the Board, Think Products argued that Figures 28, 28A–D, and 29, and the text at 15:22 to 16:3 of the '520 patent (Appx2978) support the challenged claims. Appx2850; Appx2872. The Board noted that to support the challenged claims, the alleged priority application would have to describe at least two pertinent features of the claims: (1) a captive security rod having a locking end and

an anchoring end, wherein the anchoring end is passed through the housing of a portable electronic device to anchor the captive security rod; and (2) a locking device with a locking mechanism, wherein the locking device is configured to receive the captive security rod to activate the locking mechanism. Appx20; Appx52.

The Board determined that the specification text and figures and relied on by Think Products, including Figures 28C and 28D (on which Think Products relies in this appeal) do not support the challenged claims, and that the ferrule 286 is not a *captive security rod* commensurate with the scope of the claims. The Board noted that, unlike the claimed *captive security rod*, the ferrule 286 passes freely through a hole in the housing or spike, and is not fixed to the portable electronic device. Moreover, the Board noted that the ferrule 286 does not include both a locking end and an anchoring end, because one end of the ferrule 286 is locked to a lock 110, and the other end is attached to a cable 210, not anchored to the housing. Accordingly, the Board determined that the challenged claims were not entitled to the benefit of the filing date of application for the ’520 patent, and that the earliest-possible effective filing date of the challenged claims is February 28, 2011. Appx18–23; Appx50–55.

### 3. Anticipation by the ClickSafe Video and Obviousness over ClickSafe and McDaid

The Board agreed with ACCO's uncontested position that the ClickSafe video is a printed publication made publicly available beginning October 12, 2010, and determined that the ClickSafe video is prior art to the challenged claims under 35 U.S.C. § 102(a). Appx23-24; Appx55-56. The Board also agreed with ACCO's uncontested position that the ClickSafe video discloses all limitations of all of the claims ACCO asserted were anticipated. Appx15–18; Appx48–50. Accordingly, the Board determined that the ClickSafe video anticipates claims 1–7, 9–13, and 16 of the '758 patent and claims 1–11 and 14–20 of the '144 patent. Appx23–24; Appx55–56.

Other than its argument concerning effective filing dates, Think Products did not dispute ACCO's position that claim 14 of the '758 patent and claim 12 of the '144 patent would have been obvious over the ClickSafe video and McDaid. Appx25; Appx57. Having determined that the ClickSafe video is prior art, the Board also determined that claim 14 of the '758 patent and claim 12 of the '144 patent would have been obvious over the ClickSafe video and McDaid. Appx 26-27; Appx58-59.

### 4. Obviousness over McDaid and Chen

In evaluating obviousness over McDaid and Chen, the Board noted that the parties disagreed about "whether McDaid's locking head 104 permits rotation

relative to anchor 20 upon activation of the lock." Appx28; Appx60. According to the Board, the dispute centered on the following passage in McDaid, which was also quoted in the institution decisions:

> The locking head 104 is composed of a number of components, including a housing 122, an eyelet 124, a cup 126, a cylinder 128, and a barrel 130. The housing 122 is the outer component of the locking head 104. The outer end has an opening 132 for receiving the anchor knob 60. *In one configuration, the opening 132 is round to mate with a round external member skirt 64. In another configuration, shown in FIGS. 8, the opening 132 is shaped with peaks 134 and valleys 136 to mate with the valleys 66 and peaks 68 of the external member skirt 64 of FIG. 4. With this configuration, the locking head 104 will not rotate relative to the anchor 20 when they are engaged.* By preventing such rotation, stresses on the relatively small anchor 20 caused by moving the portable article 10 while the tether 102 remains attached to the stationary fixture 6 are reduced. Since these stresses are transferred to the portable article 10, there is less likelihood that inadvertent damage will be caused to the portable article 10.

Appx28–29 (citing Appx2422 at 6:11–28) (emphasis added by Board); Appx60–61 (same). In evaluating obviousness the Board also considered the following passage in McDaid's Summary of the Invention:

> The locking head has a housing, eyelet, cup, cylinder, and barrel. The housing has an opening for receiving the anchor knob. *In one configuration, the opening is round to mate with a the clamping surface. In another configuration, the opening is shaped with peaks and valleys to mate with the valleys and peaks of the external member skirt, so that the locking head cannot rotate relative to the anchor.*

Appx29–30 (citing Appx2422 at 2:30–37) (emphasis added by Board); Appx61–62 (same).

The Board weighed the competing arguments of the parties and the conflicting testimony of the parties' experts, and concluded that McDaid discloses two embodiments; that the embodiment depicted in Figure 2 "permits rotation of locking head 104 relative to anchor 20 upon activation of the lock[;] and that the embodiment depicted in Figures 4 and 8 does not permit rotation of the locking head 104 relative to anchor 20 upon activation of the lock." Appx29–30; Appx61–62.

In determining that there was a motivation to combine the teachings of McDaid and Chen, the Board noted that ACCO asserted that a person of ordinary skill would have known that automatically-activated lock mechanisms have advantages over key-operated mechanisms, and that Chen's automatically-activated lock mechanism was suitable for use in McDaid's locking assembly. Appx30–31; Appx62–64.

The Board also considered Think Products' argument that McDaid prevents all rotation of the locking head 104 around the anchor 20, thereby teaching away from the combination. However, the Board explained that because McDaid teaches two configurations, only one of which prevents rotation, McDaid does not teach away from combining its disclosure with Chen. Appx31–32; Appx63–64.

The Board also considered Think Products' argument that McDaid teaches away because it teaches the use of a "radial" locking mechanism, while Chen discloses the use of an "axial" lock mechanism. The Board agreed with ACCO's argument that "Chen itself provides an express motivation to substitute an axial lock mechanism for McDaid's radial lock mechanism," observing that Chen teaches "*utiliz[ing] an axial locking mechanism instead of a radial locking mechanism* as in the prior art that allows the locking device to be more easily operable than the prior art." Appx0032 (citing Appx2436 at 1:63–65) (emphasis added by Board); Appx64 (same).

Accordingly, the Board concluded that there was a motivation to combine McDaid and Chen, and that the challenged claims were obvious over that combination of references. Appx32; Appx64.

## III. SUMMARY OF THE ARGUMENT

Think Products waived its objection to the Board's construction of the disputed claim term, *captive security rod* by telling the Board at final hearing that the Board's construction was correct, and by raising a new proposed claim construction on appeal. If the Court does consider the new proposed claim construction, it should determine that the Board's construction of *captive security rod* was correct. The Board correctly construed the term as "a rod-shaped portion of a locking assembly, wherein the rod is anchored to the housing of a portable

electronic device." This construction reflects the ordinary meaning of the claim language, and is consistent with the specification and with arguments Think Products made during prosecution.

Think Products now seeks an overly-broad construction of *captive security rod* to support its argument on priority benefit, arguing that the challenged claims are supported by an earlier-filed application that does not describe a *captive security rod* anchored to the housing of a device, but instead discloses a different locking arrangement in which a ferrule on a cable passes through a housing to lock the device. The Board correctly determined that the "ferrule" disclosure does not support the claims, and that the ClickSafe video demonstrating the operation of ACCO's product is prior art. The parties agree that the video, if prior art, anticipates the challenged independent claims.

Substantial evidence supports the Board's findings concerning McDaid and a motivation to combine McDaid and Chen. Accordingly, the Board correctly determined that the challenged claims are also unpatentable as obvious over McDaid and Chen. McDaid discloses a cable-lock device that includes nearly every limitation of the challenged claims, except for an automatic locking mechanism as described by Chen. The Board properly considered the evidence of record, including expert testimony, and determined that a person of ordinary skill

would have had a reason to combine Chen's automatic lock mechanism with McDaid's cable lock device.

# IV. ARGUMENT

## A. Standard of Review

The Board's factual determinations are reviewed for substantial evidence and its legal conclusions are reviewed de novo. *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1280 (Fed. Cir. 2015), *aff'd, Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131 (2016); *Inphi Corp. v. Netlist, Inc*., 805 F.3d 1350, 1354 (Fed. Cir. 2015). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kennametal, Inc. v. Ingersoll Cutting Tool Co*., 780 F.3d 1376, 1381 (Fed. Cir. 2015).

Claim construction is a question of law with underlying questions of fact. *Teva Pharm. U.S.A., Inc. v. Sandoz, Inc*., 135 S. Ct. 831, 837–38 (2015). The Board's claim constructions are reviewed de novo and its underlying factual determinations involving extrinsic evidence are reviewed for substantial evidence. *Microsoft Corp. v. Proxyconn, Inc*., 789 F.3d 1292, 1297 (Fed. Cir. 2015). If the intrinsic record fully governs the proper construction of a term, the Court reviews the Board's claim construction de novo. *Id.*

Obviousness is a question of law based on underlying facts. *Apple Inc. v. Samsung Elecs. Co*., 839 F.3d 1034, 1047 (Fed. Cir. 2016) (en banc). What the

prior art teaches, whether a person of ordinary skill in the art would have been motivated to combine references, and whether a reference teaches away from the claimed invention are questions of fact. *Meiresonne v. Google, Inc.*, 849 F.3d 1379, 1382 (Fed. Cir. 2017). Whether a claim is entitled to priority benefit of an earlier-filed application is a question of fact. *Bradford Co. v. ConTeyor N. Am., Inc.*, 603 F.3d 1262, 1268 (Fed. Cir. 2010).

### B. The Board Correctly Construed *Captive Security Rod*

The Board correctly construed *captive security rod* as: "a rod-shaped portion of a locking assembly, wherein the rod is anchored to the housing of a portable electronic device." In construing this term, the Board properly gave the term its broadest reasonable construction in light of the specification in which the term appears. 37 C.F.R. § 42.100(b); *Cuozzo Speed Techs.*, 136 S. Ct. at 2144–45 (2016); Appx11–15; Appx43–47. Think Products waived any objections to this construction by telling that Board at final hearing that it agreed with the Board's construction, and by raising a new proposed construction on appeal.

#### 1. Think Products Waived Its Objection to the Construction of *Captive Security Rod*

Think Products waived its objection to the Board's construction of *captive security rod* by telling the Board at final hearing that the construction was correct, and by raising a new claim construction argument on appeal. *See Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1358–59 (Fed. Cir. 2006) ("[L]itigants

waive their right to present new claim construction disputes if they are raised for the first time after trial.”); *In re Baxter Int’l, Inc.*, 678 F.3d 1357, 1362 (Fed. Cir. 2012) (stating that party waives claim construction arguments “by failing to timely raise them before the Board”); *Novartis AG v. Torrent Pharm. Ltd.*, 853 F.3d 1316, 1329 (Fed. Cir. 2017) (refusing to consider new argument raised in IPR appeal, stating that “a party waives an argument that it failed to present to the Board because it deprives the court of the benefit of the Board’s informed judgment”).

At final hearing, Think Products’ counsel repeatedly told the Board that Think Products agreed with or “substantially” agreed with the Board’s preliminary construction of *captive security rod.* Despite the qualifier “substantially,” Think Products did not point to what it believed were any errors in the Board’s construction. Appx4015–4019. For example, Think Products argued as follows:

> [MR. SCHINDLER] I know there may have been some confusion on Acco’s part. But according to -- according to the demonstrative exhibit, I believe, in which *Acco refers to the Board’s claim construction*, we basically, let’s see, I’m looking for the -- okay, they argued that we construed – *essentially we do agree with it.*
>
> * * * *
>
> JUDGE POLLOCK: I’m sorry, at page 6 of your Patent Owner’s response, you say that the Board commits legal error in the construction of the claim term captive security rod. How is it that you now agree with it?
>
> MR. SCHINDLER: Our biggest concern in that wasn’t so much that you committed legal error, but because it pretty much agrees with Mr. Mahaffey, our concern in

> that sense was that we believed that the Board was looking at, in their preliminary statement, for a particular embodiment that controls particular language in the claim.
>
> * * * *
>
> *Acco says we disagree, and we substantially agree, as it turns out*. And they say they agree with the Board's claim construction, but they actually disagree.

Appx4016–4018 (emphasis added). Think Products cannot be permitted to tell the Board that its construction was correct and then argue to this Court that the Board's construction is reversible error.

Aside from waiving its objection at final hearing, Think Products also waived its claim construction argument by raising a new proposed claim construction for the first time on appeal. In its Responses to each Petition, Think Products argued that *captive security rod* should be construed as follows:

> Accordingly, Think Products respectfully submits that the proper construction of the "captive security rod" claim term includes, but is not necessarily limited to, a rod or spike **285** that may include a ferrule **286** so that, upon insertion through a hole of a locking mechanism, the rod, spike or anchor is locked, via, *e.g.*, a pin lock 110 or another type of locking device, within the hole sufficient for barring unintended removal of the spike or rod from the hole.

Appx2849; Appx2871. The Board considered and rejected that proposed construction. Appx13; Appx46. Think Products never proposed to the Board that *captive security rod* should be construed as a "rod-shaped portion of a locking

assembly," as it now argues to the Court. And contrary to its appeal argument that *captive security rod* is purely structural, Think Products' proposed construction to the Board included functional aspects of the term ("so that, upon insertion through a hole of a locking mechanism, the rod, spike or anchor is locked"). Accordingly, even if Think Products did not waive all objections to claim construction at final hearing, it waived its newly-proposed construction because it never presented that construction to the Board.

For these reasons, Think Products waived its claim construction arguments, and the Court should refuse to consider this issue on appeal. *See Conoco*, 460 F.3d at 1358–59; *Baxter*, 678 F.3d at 1362; *Novartis AG*, 853 F.3d at 1329.

#### 2. The Board's Construction is Correct in View of the Claim Language, Specification, and File History

If the Court does consider Think Products' new claim construction, it should determine that the Board's construction of *captive security rod* is correct. According to the Board's construction, "the rod is anchored to the housing of a portable electronic device." Appx12; Appx44. This construction reflects the ordinary meaning of the claim language stating that the *captive security rod* has a "locking end and an anchoring end," and "wherein the anchoring end is passed through the at least one housing to anchor the captive security rod thereto" (claim 1, '758 patent) or "wherein the anchoring end is installed in the at least one

housing to anchor the captive security rod thereto" (claim 1, '144 patent). Appx335; Appx1387.

The Board's construction is consistent with the description of a *captive security rod* in the specification, which, in similar language as recited in the claims, refers to a *captive security rod* as being anchored to a housing of a portable electronic device:

> The locking assembly includes a *captive security rod* having a locking end and an anchoring end, wherein the anchoring end is passed through the at least one housing [of the portable electronic device] *to anchor the captive security rod thereto* . . . .

Appx328 (5:13–16) (emphasis added); Appx1380 (5:15–18) (emphasis added).

The Board's construction is also consistent with arguments made by Think Products during prosecution, in which Think Products distinguished alleged prior art (Murray, U.S. Patent No. 5,502,989) as *not* including a rod that is "partially *stored in the computer housing* during non-use," and instead including a "rectangular T-shaped locking member 124 [that] is stored out of the housing 137 during non-use and between deployments." Appx1277 (emphasis added). The argument confirms that a *captive security rod*, as understood and argued by Think Products during prosecution, must be "stored in" (i.e., anchored to) the housing.

Accordingly, the Board correctly construed a *captive security rod* as being anchored to the housing.

### 3. Think Products' Proposed Construction Improperly Seeks to Read Language out of the Claims

Think Products argues that *captive security rod* should be construed as a "rod-shaped portion of a locking assembly," urging the Court to ignore express claim language stating that the *captive security rod* is anchored to the housing. Blue Br. at 35.

Without support, Think Products argues that "[t]here is no recitation in independent claims of the '758 and '144 Patents that a 'captive security rod' must be anchored to the housing of a portable electronic device." Blue Br. at 17, 31. On the contrary, as noted above, claim 1 of the '758 patent and claim 1 of the '144 patent expressly recite that an anchoring end of the *captive security rod* is installed or passed through the housing "to anchor the *captive security rod* thereto." Think Products improperly urges the Court to ignore this express claim language.

Think Products also argues that the Board limited the construction of *captive security rod* to the embodiment described in Figure 30 of the specification. Blue Br. at 6-7, 16, 26, 27-31. This argument mischaracterizes the Board's claim construction analysis and has no merit. The Board did consider Figure 30, along with Figures 28, 28C, 28D, and 29, because these figures appear to relate to embodiments that involve securing a portable electronic device to a substantially immovable object, as recited in the claims. Appx6–10; Appx12–15; Appx37–42; Appx44–47. Before the Board, Think Products urged the Board to consider Figure

30 and the "captive security rod 291," arguing that Figure 30 depicts an embodiment of a claimed captive security rod:

> Likewise, FIGS. 29, 30 and 31 depict alternative embodiments of captive security rods 291, 296, 299 with the "ordinary and customary" meaning and scope of the '758 Patent claims . . . .

Appx2846; Appx2869.

Figure 30 (reproduced below) depicts two "captive security rod[s] 291" (Appx2978 at 16:4–5), one disposed in the hinge of a laptop computer, and the other extending out of the lower laptop housing:




FIG. 30

*See* Appx8 (Board's discussion of Figure 30 and captive security rod 291); Appx 40–41 (same).

Indeed, element 291 is the *only* structure identified in the specification as a "captive security rod." Accordingly, the Board properly considered the patents'

description of "captive security rod 291" in construing *captive security rod*. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) (stating that claims "must be read in view of the specification, . . . the single best guide to the meaning of a disputed term"). However, there is no support for Think Products' argument that the Board erred in limiting the scope of *captive security rod* to a particular embodiment of the invention. Instead, as discussed in Section IV.B.2 above, the Board properly based its construction on the claim language, specification, and file history.

Think Products further argues that the Board's construction somehow amounts to "a determination that the 'portable electronic device' has been 'inferentially claimed,'" and that all functional language should be ignored, citing cases addressing inferential claiming, and cases addressing construction of language in claim preambles, such as *Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801 (Fed. Cir. 2002). Blue Br. at 30–35. The cited cases are not pertinent to any issues before the Court, and these arguments are illogical and have no merit.

Accordingly, Think Products' proposed construction of *captive security rod* is incorrect and should not be adopted by the Court.

### C. The Board Correctly Determined that the Effective Filing Date of the ’758 and ’144 Patents Is No Earlier than February 28, 2011

The Board correctly determined that the ’520 patent, which issued from an application filed on May 23, 2008, does not describe the claimed invention, and that the challenged claims are not entitled to an effective filing date earlier than February 28, 2011. For a claim in a later-filed application to be entitled to the benefit of the filing date of an earlier-filed application under 35 U.S.C. § 120, the earlier-filed application (as well as any intervening applications) must provide support for each limitation of the claim, as required by the written description requirement of 35 U.S.C. § 112. *Bradford Co. v. ConTeyor N. Am., Inc.*, 603 F.3d 1262, 1268–69 (Fed. Cir. 2010). To satisfy the written description requirement, the disclosure in each application must reasonably convey to those skilled in the art that as of the claimed priority date the inventor was in possession of the later-claimed subject matter. *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991). A disclosure in a parent application is not sufficient if it “merely renders the later claimed invention obvious . . . ; the disclosure must describe the claimed invention with all its limitations.” *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1158 (Fed. Cir. 1998). As shown below, the application that issued as the ’520 patent does not describe what the challenged claims recite.

On appeal, Think Products relies on Figures 28C and 28D of the ’520 patent, which are identical to those same figures in the ’758 and ’144 patents:



FIG. 28C



FIG. 28D

Appx306; Appx307. In particular, Think Products argues that the ferrule 286 depicted in these figures is a *captive security rod* as claimed, and that these figures therefore provide an adequate written description for the challenged claims. Blue Br. at 39–43.

Contrary to Think Products' arguments, substantial evidence supports the Board's finding that Figures 28C and 28D do not provide a written description of

the claimed invention.[1] As the Board correctly stated, claim 1 of the ’758 patent requires the following two pertinent features: (1) “a captive security rod having a locking end and an anchoring end, wherein the anchoring end is passed through the at least one housing of a portable electronic device to anchor the captive security rod thereto”; and (2) “a locking device with a locking mechanism, wherein the locking device is configured to receive the captive security rod to activate the locking mechanism.” Appx20 (citing Appx335).

The ferrule 286 does not describe the first feature of claim 1 of the ’758 patent because ferrule 286 is not a *captive security rod*, as it lacks a rod-shaped portion anchored to a portable electronic device. Moreover, the ferrule is not a captive security rod having a locking end and an anchoring end, as claim 1 recites. The Board correctly found that the ferrule 286 in Figures 28C and 28D is shown passing freely through the housing, rather than fixed in the housing as claim 1 requires. Appx20; *see* Appx2978 (15:49–53) (“Hole 517 is a through hole. . . . Ferrule 286 is passed through hole 517 and locked by pin lock 110.”). The Board also correctly found that ferrule 286 does not include an anchoring end, as claim 1 requires. As noted by the Board, one end of ferrule 286 is locked to lock 110, and the opposite end of ferrule 286 is attached to cable 210, not anchored in the

[1] In particular, this brief addresses claim 1 of the ’758 patent and claim 20 of the ’144 patent, the only claims addressed by Think Products. Blue Br. at 5–6, 39–43.

housing, as required by the clam. Appx21. Accordingly, the Board correctly determined that Figures 28C and 28D do not provide a description of the subject matter of claim 1 of the ’758 patent.

Similarly, the Board correctly noted that claim 20 of the ’144 patent recites “a method for securing a portable electronic device having a housing to a substantially immovable object utilizing a locking assembly, the locking assembly comprising a security rod or spike formed with *an anchoring end separated axially by a protruding end*, a locking device with an internal locking mechanism and a cable permanently attached to the locking device at one end.” Appx54 (citing Appx1388) (emphasis added). Moreover, the Board correctly stated that claim 20 of the ’144 patent recites steps including: “securely installing *the anchoring end* of the security rod or spike to the portable electronic device in the housing” and “*inserting the locking end* of the security rod or spike into an opening in the locking device to actuate the internal locking mechanism.” Appx54 (citing Appx1388) (emphasis added).

The Board correctly found that Figures 28C and 28D do not describe what claim 20 of the ’144 patent recites. The Board correctly noted that, as shown in Figures 28C and 28D, one end of ferrule 286 is locked to lock 110, and the opposite end of ferrule 286 is attached to cable 210. The Board correctly found that the opposite end of ferrule 286 is *not* an anchoring end, securely installed “in the

housing" of the portable electronic device as the claim requires. Instead, as discussed above with respect to claim 1 of the '758 patent, the Board correctly found that ferrule 286 is passed freely through hole 517 in the housing. Appx54.

Accordingly, the Board correctly determined that the embodiments depicted in Figures 28C and 28D do not describe the challenged claims, and that the effective filing date of the challenged claims is no earlier than February 28, 2011.

### D. The Board Correctly Determined that the Challenged Claims Are Unpatentable Over ClickSafe and McDaid

Think Products does not dispute that if the Board correctly determined that the effective filing date of the '758 and '144 patents is no earlier than February 28, 2011, then the ClickSafe video anticipates claims 1–7, 9–13, and 16 of the '758 patent and claims 1–11 and 14–20 of the '144 patent; and that claim 14 of the '758 patent and claim 12 of the '144 patent are obvious over the ClickSafe video and McDaid. Blue Br. at 4, 24, 43. Accordingly, for the reasons discussed in Section IV.C above, the Board correctly determined that the challenged claims are anticipated by ClickSafe or obvious over ClickSafe and McDaid.

### E. Substantial Evidence Supports the Board's Findings Concerning McDaid's Disclosure and a Motivation to Combine McDaid and Chen

The Board's findings concerning the teachings of McDaid and Chen, and the motivation to combine the disclosures of those references are supported by

substantial evidence, and the Board correctly determined that the challenged claims are unpatentable over McDaid and Chen.

Determining whether an invention would have been obvious requires consideration of the scope and content of the prior art, differences between the prior art and the patent claims, the level of ordinary skill in the art, and any secondary considerations. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007). For a conclusion of obviousness based on a combination of references there must be a determination that there was a motivation to combine the references, that is a person of ordinary skill would have had an apparent reason to combine the known elements in the fashion claimed, and would have had a reasonable expectation of success in pursuing that combination. *See KSR*, 550 U.S. at 418; *Genzyme Therapeutic Prods. Ltd. P'ship v. Biomarin Pharm. Inc.*, 825 F.3d 1360, 1373 (Fed. Cir. 2016).

On appeal, Think Products argues that the Board erred in two aspects of its obviousness analysis. First, Think Products argues that the Board erred in finding that McDaid discloses two embodiments, one of which permits rotation between a locking head and an anchor. Second, Think Products argues that the Board erred in finding that a person of ordinary skill would have had a motivation to combine the disclosures of McDaid and Chen. As discussed below, the Board did not err in making either of these findings.

### 1. McDaid Discloses Two Embodiments

The Board correctly determined that McDaid discloses two embodiments, one of which permits rotation between a locking head and an anchor. As observed by the Board there are two portions of the McDaid specification that are pertinent to the question of whether McDaid discloses two embodiments.

First, the Board quoted in both its Institution Decisions and Final Written Decisions a passage in McDaid that describes the two configurations:

> The locking head 104 is composed of a number of components, including a housing 122, an eyelet 124, a cup 126, a cylinder 128, and a barrel 130. The housing 122 is the outer component of the locking head 104. The outer end has an opening 132 for receiving the anchor knob 60. [1] *In one configuration, the opening 132 is round to mate with a round external member skirt 64.* [2] *In another configuration, shown in FIGS. 8, the opening 132 is shaped with peaks 134 and valleys 136 to mate with the valleys 66 and peaks 68 of the external member skirt 64 of FIG. 4. With this configuration, the locking head 104 will not rotate relative to the anchor 20 when they are engaged.* By preventing such rotation, stresses on the relatively small anchor 20 caused by moving the portable article 10 while the tether 102 remains attached to the stationary fixture 6 are reduced. Since these stresses are transferred to the portable article 10, there is less likelihood that inadvertent damage will be caused to the portable article 10.

Appx28-29 (citing Appx2422 at 6:11–28) (emphasis added); Appx60-61 (same).

Second, in evaluating obviousness the Board also considered the following passage

in McDaid's Summary of the Invention that also describes the same two configurations:

> The locking head has a housing, eyelet, cup, cylinder, and barrel. The housing has an opening for receiving the anchor knob. [1] *In one configuration, the opening is round to mate with a round external member skirt, which is the outer wall adjacent to the clamping surface.* [2] *In another configuration, the opening is shaped with peaks and valleys to mate with the valleys and peaks of the external member skirt, so that the locking head cannot rotate relative to the anchor.*

Appx29–30 (citing Appx2422 at 2:30–37) (emphasis added); Appx61–62 (same).

The Board noted that ACCO argued that McDaid discloses two embodiments (or configurations) of its cable-lock invention, a first embodiment identified as "one configuration," and a second embodiment identified as "another configuration" in the specification. As described in McDaid, the first embodiment (configuration), depicted in Figure 2, includes a round external member 64 in the anchor, which mates with a round surface of the locking head, which permits rotation. In the second embodiment (another configuration), depicted in Figures 4 and 8, peaks and valleys in the external member mate with peaks and valleys in the locking head, to prevent rotation. Appx29; Appx61; Appx2415–2518; Appx2421 (4:7–12); Appx2422 (6:11–28).

Before the Board, Think Products acknowledged that McDaid discloses two embodiments, but argued that the second embodiment was merely a "fail safe,"

which included the peaks and valleys mating arrangement to prevent rotation, and that the first embodiment also prevented rotation, but without the "fail safe" arrangement. Appx29 (citing Appx2992 at ¶ 38); Appx61 (same).

On appeal, Think Products raises a new argument concerning rotation in McDaid, that rotation may be permitted during a pre-locking, mating step, but not after locking occurs. Blue Br. at 46–54. Think Products never presented this argument to the Board, and this argument is not supported by McDaid or by any evidence in the record. (For example, Think Products did not present to the Board the annotated figures at Blue Br. 45, 47.) Accordingly, Think Products waived this argument, and the Court should not consider it. *Novartis AG*, 853 F.3d at 1329. Even if the Court does consider this argument, Think Products has not shown that the Board erred in any of its findings concerning McDaid.

The Board weighed the parties' competing arguments, and conflicting testimony of the parties' experts, Mr. Mahaffey on behalf of Think Products, and Mr. White on behalf of ACCO, and found that McDaid discloses that the embodiment depicted in Figure 2 permits rotation of the locking head relative to the anchor. In weighing the testimony, the Board found that Mr. Mahaffey's testimony failed to explain adequately why a person of ordinary skill would understand from McDaid's disclosure that either the embodiment of Figure 2 does not permit rotation, or that the rotation-preventive structure in the embodiment of

Figures 4 and 8 was merely a fail-safe mechanism. The Board also noted that Mr. Mahaffey failed to address the Summary of the Invention section of McDaid, which as noted above also describes the two embodiments of the McDaid invention. Appx29–30; Appx63–64.

The Board's findings concerning McDaid's disclosure are fully supported by its discussion of specific language in McDaid, citations to the record including the testimony of both parties' expert witnesses, and detailed reasoning concerning its findings. Accordingly, substantial evidence supports the Board's findings concerning McDaid.

### 2. There Was a Motivation to Combine McDaid and Chen

The Board also correctly determined that a person of ordinary skill would have had a motivation to combine the disclosures of McDaid and Chen, and that the challenged claims are unpatentable for obviousness over this combination. Substantial evidence supports the Board's finding that there was a motivation to combine McDaid and Chen. That evidence includes testimony that a person of ordinary skill would have known that automatically-activated lock mechanisms have advantages over key-activated mechanisms, in that the former can be activated without use of a key, and that a person of ordinary skill would have understood that the Chen lock mechanism was suitable for use in the McDaid locking assembly. Appx30–31; Appx62–64.

Think Products argues that the Board erred in finding that there was a motivation to combine, because the Board erred in its understanding of what McDaid disclosed. This argument has no merit, because the Board's findings concerning McDaid's disclosure are supported by substantial evidence, as discussed in Section IV.E.1 above.

The Board's finding of a motivation to combine is also supported by Chen, which provides an express motivation to substitute its axial lock mechanism for McDaid's radial lock mechanism. As the Board observed, Chen teaches "*utiliz[ing] an axial locking mechanism instead of a radial locking mechanism* as in the prior art that allows the locking device to be more easily operable than the prior art." Appx0032 (citing Appx2436 at 1:63–65) (emphasis added by Board); Appx64 (same). Further support for the Board's finding of a motivation to combine is found in Lee, U.S. Patent No. 7,073,358, which, consistent with Chen, states that using an automatically-activated lock mechanism instead of a key-operated mechanism is more convenient:

> *Using keys to lock conventional cable locks on objects is inconvenient* because the keys must be controlled and protected. To overcome the shortcomings, *the present invention provides a self-locking cable lock* to mitigate or obviate the aforementioned problems.

Appx2459 (1:6–20) (emphasis added); *see* Appx3981–3982.

For these reasons, the Board's finding that there was a motivation to combine McDaid and Chen is supported by substantial evidence. Because substantial evidence supports the Board's factual findings regarding McDaid and the motivation to combine McDaid and Chen, the Court should affirm the Board's determination that all challenged claims are obvious over McDaid and Chen.

### F. The Board Did Not Err in Weighing Witness Testimony

During both IPRs, Think Products filed motions to exclude the testimony of ACCO's witness, Mr. White, and the Board denied these motions. Appx32–33; Appx64–65. Think Products does not appeal that evidentiary ruling, but repeats the augments from its motions to exclude, and argues that Mr. White's testimony should be "deprived of credibility." Blue Br. at 59–66. Think Products' arguments on this issue have no merit, and are improper in the sense that this Court cannot "deprive" a trial witness of credibility. To the extent Think Products is arguing that the Board gave Mr. White's testimony too much weight, ACCO's response is that the Board properly weighed Mr. White's testimony, and assessed his credibility. *See* Appx2789 (n.1); Appx2814–2815; Appx32–33; Appx64–65. The Board's credibility determination concerning Mr. White was supported by substantial evidence, and is "virtually unreviewable" on appeal. *See, e.g., Bieber v. Department of Army*, 287 F. 3d 1358, 1364 (Fed. Cir. 2002) ("The credibility

determinations of an administrative judge are virtually unreviewable on appeal.”). Accordingly, the Board did not err in weighing witness testimony.

## V. CONCLUSION

For the foregoing reasons, the Court should affirm the judgments of the Patent Trial and Appeal Board, canceling all challenged claims of the ’758 and ’144 patents.

Date: May 19, 2017

Respectfully submitted,

/s/ Michael R. Weiner

Michael R. Weiner
Sandip H. Patel
Thomas L. Duston
Tron Y. Fu
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606
(312) 474-6300

*Counsel for Appellees*

**CERTIFICATE OF SERVICE**

I certify that on May 19, 2017, I served a copy of the foregoing BRIEF OF APPELLEES ACCO BRANDS CORPORATION and ACCO BRANDS USA LLC on all counsel of record by CM/ECF.

May 19, 2017

/s/ Michael R. Weiner
Michael R. Weiner

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Circuit Rule 32(a) because it contains 9,007 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 with 14-point Times New Roman font.

May 19, 2017

/s/ Michael R. Weiner
Michael R. Weiner